UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEVEN A. GOOGOO,

    Plaintiff,

      v.

CENTRAL MAINE HEALTHCARE CORPORATION, BRIDGTON HOSPITAL, and MAINE COLLEGE OF HEALTH PROFESSIONS,

    Defendants.

Civil Action No.

COMPLAINT
JURY TRIAL REQUESTED
INJUNCTIVE RELIEF REQUESTED

NOW COMES the Plaintiff, Steven A. Googoo ("Mr. Googoo"), by and through undersigned counsel, and complains against the Defendants Central Maine Healthcare Corporation, Bridgton Hospital, and Maine College of Health Professions, as follows:

JURISDICTION AND PARTIES

1. This action arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*

2. Mr. Googoo is a United States citizen residing in the Town of Bridgton, Cumberland County, State of Maine.

3. Central Maine Healthcare Corporation ("CMH") is a health system serving central, western, and mid-coast Maine.

4. CMH is an "employer" as defined by the MHRA (5 M.R.S. §4553(4)), Title VII (42 U.S.C. §§ 2000e(b)), and the ADEA (29 U.S.C. §§ 630(b)), and had 20 or more employees for

1

each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

5.     Bridgton Hospital is a subsidiary of CMH. It operates a 25-bed hospital in Bridgton that serves people in western Maine.

6.     Bridgton Hospital is an "employer" as defined by the MHRA (5 M.R.S. §4553(4)), Title VII (42 U.S.C. §§ 2000e(b)), and the ADEA (29 U.S.C. §§ 630(b)), and had 20 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

7.     CMH and Bridgton Hospital are an integrated enterprise with common ownership, common management, interrelated operations including in the context of labor relations and human resources. As an integrated enterprise, they will be referred to hereinafter as "the Hospital".

8.     Maine College of Health Professions ("MCHP") is an educational institution that, among other things, offers degrees in radiologic technology and computed tomography. MCHP students are assigned to clinical rotations in medical imaging departments – including but not limited to Bridgton Hospital – where they gain hands-on experience in all areas of diagnostic radiography including radiographic equipment operation, patient positioning, radiation safety, and overall care.

9.     MCHP is a "person" as defined by 5 M.R.S. §4633.

10.     This Court has subject matter jurisdiction over Mr. Googoo's federal and state claims pursuant to 28 U.S.C. §§ 1331 and1367.

11.     On or about March 19, 2025, Mr. Googoo filed a timely Complaint/Charge of Discrimination against the Hospital alleging unlawful age and sex discrimination and against

MCHP alleging unlawful interference/coercion with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC").

12.    On or about April 15, 2026 the MHRC issued Notices of Right to Sue with respect to Mr. Googoo's state law claims.

13.    On or about April 28, 2026, the EEOC issued Notices of Right to Sue with respect to Mr. Googoo's federal law claims.

14.    Mr. Googoo has exhausted his administrative remedies with respect to all claims set forth in this Complaint requiring administrative exhaustion.

## JURY TRIAL REQUESTED

15.    Mr. Googoo requests a trial by jury for all claims and issues for which a jury is permitted.

## FACTUAL ALLEGATIONS

16.    Mr. Googoo is male. He was born in 1956.

17.    Mr. Googoo received an Associate degree in radiology in 1993 from Southern Maine Technical College (now known as Southern Maine Community College).

18.    Mr. Googoo is licensed by the State of Maine as a Radiologic Technologist. He is certified and registered as a Radiographer and a Computed Tomographer by the American Registry of Radiologic Technologists.

19.    Mr. Googoo moved to Bridgton and began working at Northern Cumberland Memorial Hospital (now known as Bridgton Hospital) in June 1993.

20.    Mr. Googoo's initial job title was Radiologic Technologist.

21.    In about April 2001, Mr. Googoo was promoted to Lead Diagnostic Technologist.

22.    Mr. Googoo's final rate of pay as a Hospital employee was $44.29 per hour.

23.     In his role as Lead Diagnostic Technologist, Mr. Googoo provided mentoring, supervision, competency testing, and weekly evaluations of MCHP students. Mr. Googoo taught MCHP students positioning and x-ray techniques.

24.     There was nothing in Mr. Googoo's job description about mentoring students, and he was not paid extra for that work.

25.     Over the years, Mr. Googoo received many positive comments from MCHP. He received eleven Mentor Recognition Awards between 2013 and 2024.

26.     Technologists are nominated for Mentor Recognition Awards by MCHP students at each of their clinical placements based on the following criteria:

- Actively participates in the learning process of medical imaging students

- Mentors students into the profession of medical imaging by example through demonstration of professional behaviors

- Encourages students to critically think by asking thought provoking questions and by participating in critical thinking process with the student

- Possesses clinical expertise

- Provides students with learning opportunities and professional growth by mentoring and sharing additional learning opportunities both with skills and through discussions

- Serves as mentor and role model that inspires student radiographers

- Enhances the image of medical imaging through professional practices

- Exhibits an open, approachable, caring and compassionate demeanor which enhances the learning environment

- Demonstrates and expects a high standard of practice by following policies and demonstrating safe practice

- Demonstrates vision and leadership in medical imaging practice

27.     Mr. Googoo's job performance was reviewed regularly and always rated as satisfactory or better – including specific praise for his mentorship of students.

28.     For example, Dale Morse was a respected radiology technician at Bridgton Hospital for at least 30 years and served as the Radiology Manager from 1990 to 2000. At Mr. Googoo's five-year employee recognition celebration, Mr. Morse praised Mr. Googoo as the best technologist that had ever worked for him.

29.     In his 2022 Performance Review, Mr. Googoo's manager, Alisa Noble, rated him as a "strong contributor" and wrote:

> "Steve is a strong leader. He is the Lead in xray and handles things in CT as well. He delivers on the CMHC service standards. He follows through on tasks and duties. **He works with students and he sets a good example for them** [emphasis added]."

30.     In his 2022-2023 Performance Review, Mr. Googoo's manager, Don Jackson, rated him as a "strong contributor" and wrote:

> "Steve is an excellent radiographer and CT Technologist who has a passion for teaching those with less experience. He is very flexible and does what he can to be available for the hospitals and communities. He is friendly to his patients in a professional manner that puts them at ease. **Steve is a great preceptor for the students and has received favorable comments from the students** as well as the Director of the Radiology Program. As Lead Radiographer, he is responsible for training new Team Members, and completing competency training on all radiographers in the department." [**emphasis added**]

31.     In Mr. Googoo's 2023-2024 Performance Review, Mr. Jackson, rated him as a "strong contributor" and wrote:

> "Steve is an excellent radiographer and CT technologist. **He provides thorough instructions to students and Team Members in training that are easy to understand**. . . He is in line with all CMH service standards." [**emphasis added**]

32.    Mr. Googoo poured his heart and soul into his work for over 31 years. He was proud to be a part of the Hospital. He enjoyed working with his co-workers and students, and they all worked well as a team.  Mr. Googoo gave the patients the best care and service that he could. Mr. Googoo was always ready to pitch in and work extra shifts as needed.

33.    Although Mr. Googoo did not know it at the time, on about November 12, 2024, a female MCHP student complained about him to Julie Branagan, MCHP Dean of Medical Imaging.

34.    Ms. Branagan apparently responded by removing the student from her clinical rotation at Bridgton Hospital and reporting the complaint to the MCHP Title IX Coordinator.

35.    On November 12, 2024, Ms. Branagan apparently called Mr. Jackson (Mr. Googoo's supervisor), Phil Poling (CMH Director of Medical Imaging), and the MCHP Title IX and ADA Coordinator to discuss the student's complaint.

36.    Ms. Branagan described the student's complaint to the group and stated that Mr. Googoo's behavior was "inappropriate" even though she had not heard Mr. Googoo's response to the student's allegations.

37.    Ms. Branagan stated, "We need assurance that another student will not be subject to inappropriate behavior."

38.    Ms. Branagan noted that Bridgton Hospital is a small clinical site and that Mr. Googoo was often the only technologist in x-ray.

39.    Mr. Jackson and Mr. Poling told Ms. Branagan that they would discuss next steps and get back to her.

40.    On November 14, 2024, Mr. Googoo met with Mr. Jackson in his office.

41. Mr. Jackson informed Mr. Googoo that a student complained that he had touched her shoulder and hip.

42. Mr. Googoo responded that you touch these areas while positioning someone for chest and hip x-rays.

43. Mr. Jackson said that he knew that and that he said the same thing when he was informed about the complaint. Mr. Jackson went on to say that the student believed that Mr. Googoo touched her inappropriately.

44. Mr. Googoo asked for the name of the student, and Mr. Jackson replied that he could not remember. He then stated, "It is what it is."

45. When the meeting ended, Mr. Googoo continued to go to work and perform his job duties as usual.

46. On November 22, 2024, Mr. Googoo was interviewed by Peter Eastman, Senior HR Business Partner with CMHC.

47. Mr. Eastman also asked for a tour of Mr. Googoo's work area.

48. During Mr. Googoo's interview with Mr. Eastman, Mr. Eastman stated that he did not know much about radiology or radiology positioning.

49. Mr. Eastman stated that there are studies showing that it is common for people to remember things that never happened to them even when confronted with a video showing the opposite of what they remembered.

50. Mr. Eastman asked if Mr. Googoo had called someone pretty, without providing any context.

51.     Doing his best to answer such a vague question, Mr. Googoo recalled that a patient once wrote on a Comment Card that he had said she was pretty and told Mr. Eastman about his interactions with that patient.[1]

52.     During the November 22 meeting, Mr. Eastman made a comment about Mr. Googoo working alone with students in the morning.

53.     Mr. Googoo responded that he worked alone with patients on weekends, holidays, evenings and nights and had never received any complaints. Mr. Googoo also told Mr. Eastman that he tells students that when working alone, do the best x-ray possible and treat the patient like a family member.

54.     When the meeting ended, Mr. Googoo continued to go to work and perform his job duties as usual.

55.     Tuesday, November 26, 2024, turned out to be the last day Mr. Googoo worked at Bridgton Hospital.

56.     On Wednesday, November 27, 2024, Mr. Googoo was not scheduled to work. Mr. Jackson called Mr. Googoo at home and informed Mr. Googoo that he was suspended.

57.     On Friday, November 29, 2024, Human Resources Business Manager Virginia Keel called and left a message for Mr. Googoo. He called her back later that day, but they did not connect until the following Monday.

58.     On Monday, December 2, 2024, Ms. Keel called Mr. Googoo at home and asked if he had anything final to say.

---

[1] Mr. Googoo was doing a C-spine (cervical spine) with five views. The patient was wearing a face mask with metal clips that would have interfered with the final image. Mr. Googoo told the patient, "We need to take your mask off for the last image," and helped her remove the mask. When the mask came off, Mr. Googoo was startled to see that the patient was wearing full make up. This caught him by surprise, and he did say, "Oh, you are pretty!".

59.     Mr. Googoo told Ms. Keel that he did not know who complained or the details about the complaint. He told Ms. Keel that he had been training students and new technologists the same way for 30 years. He told Ms. Keel that sometimes students are afraid or shy about touching patients in certain ways. He told Ms. Keel that usually, after he demonstrates the techniques, they start to understand, feel more comfortable, and gain confidence. Mr. Googoo told Ms. Keel that he never touched anyone inappropriately and never intended to make anyone feel uncomfortable. He told Ms. Keel that many people had seen him working with students and no one had ever raised any concerns about his teaching methods. He told Ms. Keel that he learned techniques from textbooks, from other technologists, and from years of practice.

60.     On Tuesday, December 3, 2024, Ms. Keel called Mr. Googoo in the morning and told him that Jennifer Bodger, Senior Vice President of Operations, was on the speaker with her. She informed Mr. Googoo that they were going to let him go.

61.     The reason Ms. Keel gave for Mr. Googoo's dismissal was that he engaged in inappropriate touching which was egregious.

62.     Ms. Keel told Mr. Googoo that "others" had also come forward but she did not tell Mr. Googoo who the "others" were or what they said.

63.     Ms. Keel told Mr. Googoo that Mr. Jackson and Mr. Poling had both said that the student complaints were "severe" and "egregious" and that they were both in agreement with the decision.

64.     On the day he was terminated, Mr. Googoo had two telephone conversations with Mr. Jackson. They discussed that Mr. Googoo would bring in his hospital badge and keys and clean out his locker. They agreed that Mr. Googoo would do this at 7pm and that a security

officer would meet him at the back door. Mr. Googoo told Mr. Jackson that he was still the same person and would not cause any problems.

65.    Mr. Jackson told Mr. Googoo, "I am sorry", "I did not see this coming", and "Something does not seem right here". Mr. Jackson also told Mr. Googoo, "Phil Poling - who never says anything - stated 'I smell a rat here'".

66.    Mr. Jackson's statements made Mr. Googoo doubt that Mr. Jackson or Mr. Poling had decided or even recommended that he be terminated.

67.    After Mr. Googoo was fired, he obtained a copy of the investigation that was conducted by the Hospital.

68.    Mr. Googoo never saw the student complaints while he was employed by the Hospital and was never given a chance to respond in detail to the allegations against him before he was fired.

69.    Documents from the Hospital's investigation show that the Hospital considered addressing the complaints by issuing Mr. Googoo a Written Corrective Action and Mandated Training, removing him from the roles of preceptor or trainer for students, and not scheduling him on days when students were present.

70.    The Hospital's investigation of the allegations against Mr. Googoo was completely inadequate.

71.    The investigators, Mr. Eastman and Ms. Keel, admitted that they were not familiar with radiology and the specifics regarding positioning for taking x-rays.

72.    Mr. Eastman asked Mr. Googoo questions but never informed Mr. Googoo about the allegations in detail. As a result, many of Mr. Googoo's answers were general and non-specific.

73. Ms. Keel also asked Mr. Googoo questions but at no time did she inform Mr. Googoo about specific allegations. Mr. Googoo was never presented with the details of the claims being made or provided with a fair opportunity to respond.

74. The Hospital's investigation apparently did not involve interviewing Mr. Jackson, whose office was located across the hall from the main digital x-ray room. Mr. Jackson could hear and listen to Mr. Googoo working with students and performing x-rays on patients throughout the day.

75. The Hospital's investigation did not include an interview with Ellen Thompson, a retired radiology technologist who volunteered and worked in the radiology office. Ms. Thompson could and would have shed light on Mr. Googoo's interactions with students.

76. Ms. Keel did interview Kate Fitzcharles, a radiology technician who worked with Mr. Googoo at Bridgton Hospital for about 20 years.

77. Ms. Keel asked Ms. Fitzcharles questions that were ill informed. For example, Ms. Keel asked Ms. Fitzcharles if you touch a patient "between the legs" for an x-ray, which Ms. Fitzcharles understood to mean, "do you touch their crotch", so she replied "no".

78. If Ms. Keel was knowledgeable about radiology, she would have elicited information from Ms. Fitzcharles confirming that you have to touch patients to position them for exams. For example, for a hip x-ray, you need to palpate the patient's body to find the ASIS (anterior superior iliac spine), a landmark at the top/front of the pelvis.

79. If asked, Ms. Fitzcharles would have told Ms. Keel that she frequently observed Mr. Googoo working with students and that during the many years she worked with Mr. Googoo, she never saw him touch someone inappropriately or heard anyone report or complain that he touched someone inappropriately.

**Student-1's Allegations**

80.    Student-1 asked Mr. Googoo to do her evaluations almost every week, which led Mr. Googoo to believe that he did not make her feel uncomfortable.

81.    Mr. Googoo was never told that he made Student-1 feel uncomfortable.

82.    In the early fall of 2024, Danielle Brown, a clinical instructor from MCHP, observed Mr. Googoo working with Student-1.

83.    In her complaint, Student-1 alleged that Mr. Googoo inappropriately touched her chest. Mr. Googoo denies this. Mr. Googoo recalls that Student-1 was having trouble with a lateral chest image (rotation of the ribs). Mr. Googoo instructed Student-1 to touch the back of the shoulders and top of the chest to turn the patient in a true lateral position.

84.    In her complaint, Student-1 alleged that Mr. Googoo inappropriately touched her inner and outer thigh. Mr. Googoo denies this. He observed Student-1 clipping the pubic symphysis of the hip, so Mr. Googoo tapped Student-1's inner and outer thigh and told her to move the midsagittal centerline more medial (towards the inner thigh). This video demonstrates the technique: https://www.youtube.com/watch?v=EGK84FWa3vQ.

85.    In her complaint, Student-1 alleged that Mr. Googoo inappropriately touched her at the control panel. Mr. Googoo denies this. He did not touch Student-1 in a sexual or inappropriate way. He sometimes reached quickly to the control panel before an exposure was taken and that could result in inadvertently touching the person at the control panel. If several people are working in a confined space, they might bump into each other. They typically apologize and move on.

**Student-2's Allegations**

86.     Student-2 was interviewed the day Mr. Googoo was terminated. She most likely had been in communication with Student-1.

87.     Student-2 had also asked Mr. Googoo to do her weekly evaluation, which indicates that she did not feel uncomfortable around him.

88.     Student-2 alleged that Mr. Googoo touched her face and back with his body and hand. This is untrue. Mr. Googoo would never do this to a student or patient.

89.     Student-2 alleged that Mr. Googoo hovered his hand over her "private area". Hovering is appropriate at times for alignment of a body part and the table Bucky. (A Bucky is a tray-like device that is located underneath the examination table. Its function is to improve image quality.)

90.     Student-2 alleged that Mr. Googoo told her to smile at patients, which is true. Student-2 was talking to a patient with her head down and not making eye contact. Mr. Googoo would always instruct students to look directly at the patient and smile, to help put the pageint at ease.

91.     The phrase "believe women" is a slogan stemming from the #MeToo movement, urging the public to take accusations of sexual harassment or assault seriously, especially when initially reported by women.  It emphasizes the importance of listening to and believing women's accounts, as women are often disbelieved or their experiences minimized. However, "believe women" is not an endorsement of automatic belief or blind acceptance without evidence.

92.     It is completely normal for some people to feel uncomfortable being touched. This can be due to various reasons, including personal preferences, past experiences, cultural background, or sensory sensitivities. Thus, there is no reason to disbelieve that Student-1 and

13

Student-2 felt uncomfortable being touched. However, there is zero evidence that Mr. Googoo touched them inappropriately much less engaged in misconduct that was so egregious that he had to be fired.

93. Mr. Googoo has a 30+ year history as a professional technologist with decades of experience mentoring students, many of them female.

94. There had never been a single prior complaint about Mr. Googoo's conduct toward women; he was never accused of sexual harassment or any other form of misconduct toward patients, students, or co-workers.

95. Scores of female students have complimented Mr. Googoo for being a great mentor and advocate.

96. The students in question were also mentored by female technicians who had to use touch to position them for exams. They did not complain about being touched by another woman. They complained about Mr. Googoo touching them because of his sex.

97. MCHP demanded and/or coerced the Hospital into terminating Mr. Googoo because he is male.

98. MCHP leaders assumed and jumped to inappropriate conclusions, based on stereotypes about men, that Mr. Googoo was using touch inappropriately to exert power and control over students and was touching students for purposes of sexual gratification because he is male and they are female.

99. MCHP treated Mr. Googoo differently and worse because of his sex.

100. The Hospital's investigation was influenced by witnesses like "B" who said things like, "It may just be his generation – 'can't teach an old dog new tricks kind of thing' – Steve is not going to change." This is direct evidence that Mr. Googoo's age was a factor that

14

made a difference in the decision to fire him instead of a lesser sanction such as coaching or counseling.

101.    No one had ever told Mr. Googoo that his sense of humor or habit of touching people on the shoulder was inappropriate or offensive. He is certainly capable of change.

102.    The person who replaced Mr. Googoo as Lead Diagnostics Technologist was Delaney Bryant. Ms. Bryant is female, about 23 years old, and – ironically - a former student of Mr. Googoo's.[2]

103.    The Hospital was not planning to terminate Mr. Googoo until they were pressed and coerced into doing so by MCHP.  The incomplete and inadequate investigation evidences this fact. Ms. Branagan's statements to the Hospital about Mr. Googoo are further proof of this fact.

104.    The Hospital's investigative documents indicate that MCHP told the Hospital that if they did not fire Mr. Googoo, MCHP would stop sending students to Bridgton Hospital.

105.    Bridgton Hospital relies on students from MCHP to meet the needs of the Hospital and as a pipeline for future staffing.

106.    MCHP coerced the Hospital to act on MCHP's unfounded and discriminatory assumptions.

107.    The fact that young female students complained about Mr. Googoo and the fact that he is an older male was enough to cause MCHP to insist that he be pushed out of his job.

108.    MCHP's biased assumptions about Mr. Googoo were not based on any real investigation or information from Mr. Googoo and others with relevant experience.

---

[2] At the 2024 Christmas luncheon for imaging at Bridgton Hospital, Ms. Bryant personally thanked Mr. Googoo for training her. Mr. Googoo was invited to attend that luncheon by Mr. Jackson and the imaging team shortly after he was discharged from employment by Respondents.

109. MCHP's demands led the Hospital to override the recommendations of its own investigation and the Hospital's initial plan to address the student allegations.

110. Mr. Googoo's termination was caused by MCHP's discriminatory animus.

111. Although the Hospital was unlawfully pressured and coerced into terminating Mr. Googoo, they are still liable. An employer cannot justify discrimination by claiming that a third party coerced them to do it.

112. The Hospital could have pushed back and made clear to MCHP that they would not wrongfully terminate Mr. Googoo to satisfy MCHP and possibly persuaded MCHP not to engage in the unlawful coercion as threatened.

113. The Hospital could have protected Mr. Googoo from MCHP's unlawful discrimination and coercion and not acted on the discriminatory demands to terminate his employment but instead effectuated and acted on MCHP's discriminatory demands.

114. In the end, complying with the law and notifying MCHP that they would not be coerced into discrimination may have had adverse consequences for the Hospital if MCHP followed through on its threats, but this is not a defense to liability.

115. The Hospital informed the MHRC that no employee other than Mr. Googoo has ever been terminated for sexual harassment.

116. Given that CMH was formed in 1982, it is highly likely that other employees have been accused of sexual harassment and not fired. This will likely show that Mr. Googoo's sex and age were a factor in the decision to terminate his employment.

117. Mr. Googoo was terminated because of his age and sex.

118. Mr. Googoo's protected class status was a factor that made a difference in his termination.

16

119. There is direct evidence of the Hospital's unlawful discrimination.

120. Unlawful discrimination is evidenced by the animus of the Hospital's and MCHP's administrators and human resources personnel towards Mr. Googoo.

121. Unlawful discrimination is evidenced by the shoddy investigation that preceded Mr. Googoo's termination.

122. Mr. Googoo would not have been terminated if he were a younger female.

123. In addition to causing Mr. Googoo economic damages, MCHP's unlawful coercion and the Hospital's unlawful discrimination have caused Mr. Googoo substantial stress, anxiety, and humiliation and other non-economic damages.

124. Defendants knowingly violated Plaintiff's state and federal rights and/or violated Plaintiff's rights with reckless indifference and so are liable for punitive damages.

COUNT I: MHRA – Sex Discrimination

125. Paragraphs 1-124 are incorporated by reference.

126. Defendants CMH and Bridgton Hospital have engaged in unlawful sex discrimination.

COUNT II: Title VII

127. Paragraphs 1-126 are incorporated by reference.

128. Defendants CMH and Bridgton Hospital have engaged in unlawful sex discrimination.

COUNT III: MHRA – Age Discrimination

129. Paragraphs 1-128 are incorporated by reference.

130. Defendants CMH and Bridgton Hospital have engaged in unlawful age discrimination.

### COUNT IV: ADEA

131.    Paragraphs 1-130 are incorporated by reference.

132.    Defendants CMH and Bridgton Hospital have engaged in unlawful age discrimination.

### COUNT V: MHRA – 5 M.R.S. §4633(2)

133.    Paragraphs 1-132 are incorporated by reference.

134.    Defendant MCHP violated 5 M.R.S. §4633(2) by coercing, intimidating, threatening or interfering with Plaintiff's right to be free of sex and age discrimination in employment.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A.    Declare the conduct engaged in by Defendants to be in violation of his rights;

B.    Enjoin Defendants, their agents, successors, employees, and those acting in concert with it from continuing to violate his rights;

C.    Order the Hospital to reinstate Plaintiff or award front pay to Plaintiff;

D.    Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendants' unlawful conduct;

E.    Award equitable-relief for back pay, benefits and prejudgment interest;

F.    Award compensatory damages in an amount to be determined at trial;

G.    Award punitive damages in an amount to be determined at trial;

H.    Award liquidated damages in an amount to be determined at trial;

I.    Award nominal damages;

J.    Award attorneys' fees, including legal expenses, and costs;

18

K.      Award prejudgment interest;

L.      Permanently enjoin Defendants from engaging in any employment practices that violate the MHRA, Title VII, or ADEA;

M.      Require Defendants to mail a letter to all employees notifying them of the verdict against them and stating that Defendants will not tolerate discrimination or coercion in the future;

N.      Require that Defendants post a notice in all of their workplaces of the verdict and a copy of the Court's order for injunctive relief;

O.      Require that Defendants train all management level employees on the protections afforded by the MHRA, Title VII, and ADEA;

P.      Require that the Hospital place a document in Plaintiff's personnel file which explains that he was unlawfully terminated because of unlawful age and sex discrimination; and

Q.      Grant to Plaintiff such other and further relief as may be just and proper.


Dated: May 3, 2026                      /s/ Chad T. Hansen
                                        Chad T. Hansen
                                        Attorney for the Plaintiff

                                        EMPLOYEE RIGHTS GROUP
                                        92 Exchange Street 2nd floor
                                        Portland, Maine 04101
                                        Tel. (207) 874-0905
                                        Fax (207) 874-0343
                                        Chad@EmployeeRightsLaw.Attorney